**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DAVID A. MCDONNELL,

                Plaintiff,

vs.

Case No. 8:17-cv-3090-T-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

David A. McDonnell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of an intracranial hemorrhage that causes insomnia, anxiety at night, headaches, dizzy spells, vision issues, and balance issues. Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed March 26, 2018, at 104, 111, 112, 238, 262. On August 1, 2014, Plaintiff filed an application for SSI, alleging an onset disability date of June 21, 2014.[2] Tr. at 203-12.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 17), filed March 27, 2018; Reference Order (Doc. No. 19), entered March 28, 2018.

[2] Although the application was actually completed on August 1, 2014, Tr. at 203, Plaintiff's protective filing date is listed elsewhere in the administrative transcript as July 18, 2014, see, e.g., Tr. at 71, 104, 111.

Plaintiff's application was denied initially, Tr. at 103, 104-08, 109, 131-33, and on reconsideration, Tr. at 110, 111-24, 125, 134-38.

On September 19, 2016, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 86-102. On October 5, 2016, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed.[3] Tr. at 71-81. Plaintiff then requested review by the Appeals Council. Tr. at 199. The Appeals Council accepted additional evidence in the form of a brief authored by Plaintiff's representative. Tr. at 4-5; see Tr. at 294-302 (brief). On September 22, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. Plaintiff sought and received an extension of time to file an action in this Court. Tr. at 7, 15-16; see also Tr. at 20-21 (duplicates). On December 26, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), see also Tr. at 12-14, seeking judicial review of the Commissioner's final decision.

Plaintiff makes five arguments on appeal: 1) the ALJ erred in failing to properly address his headaches; 2) the ALJ failed to include certain limitations in the residual functional capacity ("RFC") and the hypothetical question to the VE; 3) the ALJ erred in addressing and partially rejecting all medical opinions of record; 4) the ALJ's rejection of Plaintiff's subjective allegations is unsupported by substantial evidence; and 5) an award of benefits is the appropriate remedy for the errors. Plaintiff's Memorandum (Doc. No. 22; "Pl.'s Mem."), filed June 28, 2018, at 1, 11-14 (first argument), 14-16 (second argument), 16-21

---

[3] In SSI cases, "the earliest month for which [the Administration] can pay [a claimant] benefits is the month following the month [the claimant] filed the application." 20 C.F.R. § 416.335.

(third argument), 21-22 (fourth argument), 22-23 (fifth argument). On August 24, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") addressing the arguments raised by Plaintiff. After a thorough review of the record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 73-81. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 18, 2014, the [protective] application date." Tr. at 73 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: status-post head injury with dizzy spells, polysubstance abuse, organic mental disorder, depression, and anxiety." Tr. at 73 (emphasis and citation omitted). At step three, the ALJ ascertained that

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 73 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) except that [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for no more than six hours in an eight-hour workday; can sit for no more than six hours in an eight-hour workday; can occasionally climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can occasionally balance; can frequently stoop, kneel, crouch, crawl; must avoid concentrated exposure [to] unprotected heights and dangerous equipment; and is limited to simple, routine, unskilled job tasks.

Tr. at 75-76 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Construction Worker II" and a "Fisher, Net." Tr. at 79 (some emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age ("48 years old, which is defined as a younger individual . . ., on the date the application was filed" with a "subsequent[] changed age category to closely approaching advanced age"), education ("limited education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find that Plaintiff is capable of performing work that exists in significant numbers in the national economy. Tr. at 79-80 (some emphasis omitted). Namely, the ALJ identified representative jobs as "Bench Assembler," "Ticket Taker," and "Sewing Machine Operator." Tr. at 80 (capitalization omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . since July 18, 2014, the date the application was filed." Tr. at 81 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty

-4-

v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff makes five arguments. The undersigned addresses the first argument (regarding Plaintiff's headaches); followed by a single discussion of the second and third arguments (regarding the RFC, hypothetical, and medical opinions); followed by a discussion of the fourth argument (regarding Plaintiff's subjective complaints). Because the undersigned concludes that the ALJ's Decision is due to be affirmed, Plaintiff's fifth argument (that an award of benefits is appropriate) is not addressed.

**A. Headaches - Step Two**

Plaintiff contends the ALJ erred in failing to find his headaches are a severe impairment at step two.[5]  Pl.'s Mem. at 1, 11-14.

"The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he [or she] is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished).  To be sure, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

---

[5] Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Regulations in effect at the time the claim here was filed provided six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe. Any omission of a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

Here, at step two, the ALJ found Plaintiff has severe impairments of "status-post head injury with dizzy spells, polysubstance abuse, organic mental disorder, depression, and anxiety." Tr. at 73 (citation omitted). The ALJ did not specifically make a severity finding regarding Plaintiff's headaches at step two, but the headaches appear to be encompassed by the severe impairment of "status-post head injury with dizzy spells." Tr. at 73. In any event, if the ALJ somehow neglected to find the headaches to be severe and should have, not all of the severe impairments must be identified at step two. See Heatly, 382 F. App'x at 825; Burgin, 420 F. App'x at 903. In other words, the omission at that step is harmless as long as it is clear that the ALJ considered the headaches at later steps. See Heatly, 382 F. App'x at 825; Burgin, 420 F. App'x at 903.

It is clear the ALJ was aware of and considered at later steps Plaintiff's allegations of headaches. The ALJ in discussing Plaintiff's allegations of disabling impairments acknowledged Plaintiff's "head injury," which had "corresponding symptoms of headaches . . . ." Tr. at 76. The ALJ then went on to discuss the medical evidence, referring to allegations of headaches multiple times in the discussion. See Tr. at 76-77. Regarding

Plaintiff's head trauma and corresponding symptoms, the ALJ found that "[a]side from [Plaintiff's] initial emergency room visit for head trauma and his subsequent return one month later, the record contains very little evidence regarding [Plaintiff's] impairments." Tr. at 77. The ALJ also acknowledged that Plaintiff sought emergency room treatment for headaches in May 2015 and August 2015, but that the paperwork for those visits merely contains discharge instructions and prescriptions. Tr. at 77. These findings are supported by substantial evidence in the administrative transcript. See, e.g., 304-41, 346-56, 357-58, 375-85, 388-96. The ALJ did not err in assessing Plaintiff's headaches.

## B. Medical Opinions, RFC, and Hypothetical

Plaintiff argues the ALJ erred in addressing the various medical opinions in the record, and in assessing the RFC and posing the hypothetical to the VE. Pl.'s Mem. at 1, 14-16, 16-21. Regarding the RFC and hypothetical to the VE, Plaintiff contends that the ALJ did not incorporate "the credited limitation of an inability to follow three-step instructions." Id. at 14.

There are no opinions regarding Plaintiff's functioning from treating physicians in the administrative transcript; it only contains opinions from examining and non-examining medical sources. The Regulations[6] establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating

---

[6] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[7] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

An examining physician's opinion is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279

(11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

An ALJ poses a hypothetical question to a VE as part of his or her step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Brunson v. Astrue, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished)).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling" (internal quotation and citations omitted)); Wilson, 284 F.3d at 1227 (stating that "for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments" (citation omitted)).

Here, the ALJ addressed in detail the various opinions of record in assessing the RFC and later posing the hypothetical to the VE. First, the ALJ addressed the opinion of examining physician Anil Bhatia, M.D. Tr. at 77; see Tr. at 368-73 (Dr. Bhatia's opinion). The ALJ summarized the findings of Dr. Bhatia and noted that the opinion "simultaneously indicated that [Plaintiff] ambulated 'normally' and had an irregular gait," which, according to the ALJ, "somewhat undermine[d] the legitimacy of the report." Tr. at 77; see Tr. at 369-70

(Dr. Bhatia's notations regarding ambulation and gait). "Nevertheless," wrote the ALJ, "the majority of [Plaintiff's] clinical findings were generally benign, aside from some residual palsy on the left side of the face. Otherwise, [Plaintiff] demonstrated full muscle strength, no tremors, and normal reflexes." Tr. at 77; see Tr. at 370-73 (Dr. Bhatia's findings). The ALJ also noted that Plaintiff's "visual acuity was 20/50 on the left and 20/40 on the right." Tr. at 77; see Tr. at 370 (Dr. Bhatia's finding). The ALJ did not specifically assign weight to Dr. Bhatia's opinion. See Tr. at 77. It is clear, however, that even though the ALJ noted an internal inconsistency in it, she accepted the majority of the other findings therein. The ALJ did not reversibly err in this regard.

Second, the ALJ afforded "only partial weight" to the opinion of Timothy Foster, Ph.D., an examining psychologist. Tr. at 78; see Tr. at 363-66. The ALJ explained that she (the ALJ) "limited [Plaintiff] to simple, routine, and unskilled tasks" to account for Dr. Foster's stated limitation of an inability "to follow three-step instructions." Tr. at 78; see Tr. at 365 (Dr. Foster's finding). As to other portions of the opinion, however, the ALJ found certain limitations were "overstated, especially considering [Dr. Foster's] finding that [Plaintiff's] attention was within normal limits." Tr. at 78; see Tr. at 364-65 (Dr. Foster's finding). "Similarly," elaborated the ALJ, "[Dr. Foster's] opinion that [Plaintiff] was unable to remember work-like procedures or locations is inconsistent with memory testing during the evaluation." Tr. at 78; see Tr. at 364-65 (Dr. Foster's summary of memory testing). The ALJ's reasons for rejecting certain limitations contained in Dr. Foster's opinion are supported by substantial evidence. Further, the ALJ's limitation of "simple, routine, unskilled job tasks" in the RFC and hypothetical to the VE, Tr. at 76 (emphasis omitted), adequately accounted for Dr. Foster's stated limitation of an inability to follow three-step instructions.

Third, the ALJ discussed the opinion of non-examining physician Gloria Hankins, M.D. Tr. at 78; see Tr. at 117-19 (Dr. Hankins's opinion). The ALJ found Dr. Hankins's opinion to be "consistent with the medical record as a whole" and afforded it "significant weight." Tr. at 78; see Tr. at 77 (ALJ observing, "Aside from [Plaintiff's] initial emergency room visit for head trauma and his subsequent return one month later, the record contains very little evidence regarding [Plaintiff's] impairments"). But, "out of an abundance of caution, [the ALJ] further reduced the lifting and/or carrying limitations to 20 pounds occasionally and 10 pounds frequently." Tr. at 78-79. These findings are supported by substantial evidence.

Fourth, the ALJ discussed the opinion of non-examining psychologist Theodore Weber, Psy.D. Tr. at 79; see Tr. at 119-22 (Dr. Weber's opinion). The ALJ "afforded significant weight to the opinion," but rejected Dr. Weber's stated limitation of "difficulty accepting criticism from supervisors" because it was inconsistent with Dr. Foster's personal evaluation and finding that Plaintiff "adequately relate[d] to peers, supervisors, and the public." Tr. at 79; see Tr. at 366 (Dr. Foster's finding). These findings are supported by substantial evidence.

Despite having discounted some parts of the various medical opinions, the ALJ did not improperly substitute her own opinion. Instead, the ALJ appropriately based her assessment of Plaintiff's impairments on the objective evidence in the record overall. See Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014) (unpublished) (stating that despite discounting the one medical opinion in the record, "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC" (citing 20 C.F.R. § 404.1545(a)(3))); Green v. Soc. Sec. Admin., 223 F. App'x 915, 924 (11th Cir. 2007) (unpublished) (stating that although he discounted the treating physician's opinion, "[t]he ALJ did not substitute his

judgment for that of [the treating physician]; rather, he determined that [the treating physician's] opinion was inconsistent with objective medical evidence in the record"); Jackson v. Colvin, No. 8:14-cv-1159-T-TGW, 2015 WL 12844406, at *4 (M.D. Fla. July 16, 2015) (unpublished) (discussing Castle and Green, and stating that an ALJ's RFC finding "need not be based on a physician's opinion of the plaintiff's functioning" (citation and footnote omitted)). The ALJ did not err regarding the medical opinions, RFC, and hypothetical to the VE.

## C. Subjective Complaints

Plaintiff contends the ALJ erred in addressing his subjective complaints. Pl.'s Mem. at 1, 21-23. To that end, Plaintiff argues that "the ALJ failed to properly consider Plaintiff's allegations of severe headaches and dizziness given his significant traumatic head injury." Id. at 21-22. Plaintiff also asserts that "[the] ALJ erred in failing to properly consider Plaintiff's lack of funds and inability to drive before rejecting his allegations due to lack of treatment." Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The Social Security Administration recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The Administration has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[8] "In doing so, [the Administration has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of

---

[8] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 78. The ALJ's Decision reflects adequate consideration of the various factors and of Plaintiff's testimony and allegations. See Tr. at 76-78. The Decision also reflects adequate consideration of Plaintiff's alleged headaches and dizziness (as elaborated on in Section IV.A., supra, with respect to the headaches). See Tr. at 76-78.

Further, although the ALJ noted that the record was sparse in terms of medical evidence and in terms of Plaintiff seeking treatment for his alleged physical and mental disorders, she did not rely significantly on noncompliance with treatment. See Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015) (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)). (stating that "[w]here the ALJ d[oes] not rely significantly on the claimant's noncompliance . . . the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error"). For this reason, the ALJ did not reversibly err by failing to address Plaintiff's alleged lack of funds and inability to drive. Overall, the ALJ's determination that

the effects of Plaintiff's impairments were not as great as Plaintiff alleged is supported by substantial evidence.[9]

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 28, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record

---

[9] Plaintiff contends the ALJ improperly considered his regular drinking and marijuana use in evaluating his complaints. See Pl.'s Mem. at 22. The ALJ did inquire about these matters at the hearing, Tr. at 100-01, and she found in the Decision that Plaintiff had a history of polysubstance abuse, Tr. at 73. But, the ALJ did not significantly rely upon the drug and alcohol use in evaluating Plaintiff's complaints other than to note that Plaintiff "acknowledged that he continues to drink alcohol and smoke marijuana on a weekly basis." See Tr. at 77.